See also 19 Cl.Ct. 624.

**DEUTERIUM CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**EIC Laboratories, Inc., Third–Party Defendant.**

No. 425–82 C.

United States Claims Court.

March 12, 1990.

David M. Singer, Greenwich, Conn., for plaintiff.

Oscar A. Towler, III, Washington, D.C., with whom was Donald E. Townsend, and Asst. Atty. Gen. John R. Bolton, for defendant.

Charles C. Winchester, Boston, Mass., for third-party defendant.

## ORDER

RADER, Judge.

Plaintiff, Deuterium Corporation, seeks compensation from the United States on several counts, including patent infringe-

ment. Plaintiff's patent, United States Patent No. 4,123,506 (the '506 patent), covers a process for removing hydrogen sulfide from geothermal steam. Plaintiff contends that the United States Department of Energy used the process at The Geysers geothermal power plant in California.

Before the present judge received this case, plaintiff requested extensive discovery from defendant. Defendant refused to comply on the basis of the attorney-client privilege and the work product doctrine. Plaintiff filed motions to compel discovery, to suspend proceedings, to impose sanctions, and more. Defendant's Brief, No. 425–82C, filed Oct. 13, 1989, Appendix (Def.App.), at A–1–3. Defendant responded with a motion for a protective order.[1] *Id.*

On November 10, 1983, the United States Claims Court ordered defendant to deliver to the court 50 documents for *in camera* inspection. The parties resolved the controversy on ten of the documents. Therefore, on November 25, 1983, defendant filed 40 documents with the court.

On August 31, 1989, during a telephonic status conference, plaintiff orally renewed its motion to compel discovery. Defendant opposed the request. This court ordered defendant to file a status report concerning the advisability of employing a protective order to permit release of the sealed documents.[2] On October 13, 1989, defendant filed a memorandum reasserting the attorney-client privilege or the work product doctrine as a bar to release of the documents.

After document-by-document review of the record with both attorneys offering oral argument, this court orders the release of 17 documents. Either the attorney-client privilege or the work product doctrine applies to the remaining documents.

## Attorney–Client Privilege

Federal Rule of Evidence 501 states:

[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.

Fed.R.Evid. 501. The oldest common law privilege applies to communications between attorneys and clients. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. The attorney-client privilege protects a client's confidential communications to an attorney during legal counselling. *Id.; American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed.Cir.1987).

█ Plaintiff argues that communications from Government employees to Government lawyers should not receive full protection of the attorney-client privilege. The Supreme Court, however, applied the privilege to prevent disclosure of communications from corporate employees to corporate counsel. *Upjohn*, 449 U.S. at 383, 101 S.Ct. at 677. The Court expressly rejected efforts to confine coverage of the privilege to those managers with control over corporate affairs. *Id.* at 392–93, 101 S.Ct. at 684–85. The Court reasoned that mid- and lower-level employees can embroil the corporation in legal difficulties. *Id.* at 391, 101 S.Ct. at 683. Therefore, to ensure full disclosure of pertinent information to counsel, the Court applied the privilege to protect communications from these employees as well. *Id.* This court applies the same reasoning and result to Government employees at all levels.

---

1. At the time of this flurry of motions, defendant offered to release some of the documents conditioned on the understanding that their production would not waive privileges for other documents or subject matter. Defendant's Brief, No. 425–82C, filed Oct. 13, 1989, at 2–3.

2. From the time this court received this case in October 1988 until March 6, 1990, the documents remained in the sealed envelope.

■ Plaintiff also suggests that the attorney-client privilege may not apply to communications with a Government employee who is not acting in the role of an attorney. The United States Court of Claims explained that the General Counsel or Solicitor of an agency acts as an attorney for other officials of the agency. *Cities Serv. Helex, Inc. v. United States*, 216 Ct.Cl. 470, 476 (1978). The privilege also applies to communications with other agency lawyers who provide legal counsel in connection with the impending litigation. *General Elec. Co. v. United States*, 176 U.S.P.Q. 83, 85–87 (1972); *Air Shield, Inc. v. Air Reduction Co.*, 46 F.R.D. 96, 159 U.S.P.Q. 376 (N.D.Ill.1968).

Protection of communications from the attorney to the client depends on the circumstances of each case. *American Standard*, 828 F.2d at 745. To the extent that attorney communications reveal information received from the client, the privilege bars disclosure. *Id.* Moreover, the United States Court of Appeals for the Federal Circuit rejected the notion that patent-validity opinions are never protected by the attorney-client privilege. *American Standard*, 828 F.2d at 745–46. Rather, the Federal Circuit placed on the trial court the obligation to determine whether attorney-to-client communications contain confidential information. *Id.* at 746. Specifically, this court must determine if attorney-to-client communications "disclose, directly or indirectly," information received from the client. *Id.* at 745.

### Work Product Doctrine

RUSCC 26(b)(2) states:

[A] party may obtain discovery of documents ... prepared in anticipation of litigation or for trial ... only upon a showing that the party seeking discovery has substantial need of the materials ... and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials

when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

RUSCC 26(b)(2). The Supreme Court has acknowledged that an attorney must work in an atmosphere of privacy. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1946). Otherwise, "much of what is now put down in writing would remain unwritten." *Id.* at 511, 67 S.Ct. at 393. Thus, intrusions on an attorney's thought and work products would impede "the interests of clients and the cause of justice." *Id.*

RUSCC 26 affords "special protection to work product revealing the attorney's mental processes." *Upjohn*, 449 U.S. at 400, 101 S.Ct. at 688.[3] In the case of documents disclosing attorney mental processes, the Supreme Court required a stronger showing than the "substantial need" and "without undue hardship" standards. *Id.* at 401, 101 S.Ct. at 688.

Plaintiff contends that the Department of Energy (DOE) did not prepare many of the contested documents in connection with the lawsuit. Thus, plaintiff argues that these materials do not qualify as "documents ... prepared in anticipation of litigation or for trial...." RUSCC 26(b)(2). In this respect, however, the documents satisfy the requirements of RUSCC 26. DOE attorneys or employees prepared these materials before plaintiff filed this lawsuit, but in anticipation of its filing.

On November 17, 1978, plaintiff notified the Government's grantee, Pacific Gas and Electric Company (PG & E), of the potential infringement. DOE immediately opened an administrative claim file. Administrative claims, which are themselves adversarial proceedings, often culminate in Claims Court litigation.

---

3. While *Upjohn* involved application of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 26(b)(3) is virtually identical to RUSCC 26(b)(2). This court may use interpretations of the Federal Rules in applying analogous Claims Court rules. *Allgonac Mfg. v. United States*, 198 Ct.Cl. 258, 262, 458 F.2d 1373, 1376 (1972).

RUSCC 26 protects attorney work products to ensure that lawyers may provide—at the first expectation of litigation—full, fair, and frank counsel to potential clients. An administrative claim presents the specter of litigation. From the time plaintiff notified PG & E of its infringement claims, DOE attorneys reasonably anticipated the prospect of litigation. Therefore, plaintiff's November 17, 1978 letter triggered application of the work product doctrine.

## Documents D–14 and D–14A

This document is a letter from one of defendant's counsel to another. Def. App., at A–15. The two-paragraph letter does not disclose, directly or indirectly, any information received from the attorney's client, DOE. Rather the letter recites information already on the public record. The attorney-client privilege does not foreclose release of this letter.

Defendant also invokes the work product doctrine. Plaintiff shows a substantial need to discover whether DOE and PG & E conspired to deprive plaintiff of its intellectual property. Plaintiff cannot, without undue hardship, obtain the substantial equivalent of these documents by any other means. This letter does not contain the mental impressions or legal conclusions of the attorney. Therefore, plaintiff satisfies the RUSCC 26 standard for release of the document.[4]

## Document 16

This record of a telephone conversation between EIC's patent counsel and DOE's patent counsel, qualifies for work product protection. The document contains the attorney's legal conclusions, opinions, and theories about the patent's validity. Plaintiff does not show a "substantial need," let alone the heightened necessity required for an attorney's mental impressions.

## Document 17

This record of a telephone conversation between DOE's patent counsel and DOE's program manager qualifies for protection.[5] The attorney-client privilege applies to this record. The record contains direct statements from the client to the attorney. According to the attorney's transcription of the conversation, Mr. Reeber, DOE's Project Manager, stated his understanding of the economic impact of geothermal steam.

The document also qualifies for work product protection. Plaintiff, without undue hardship, could obtain the information discussed in this record. Therefore, plaintiff does not meet its burden of showing a need to discover this record.

## Document 18

This document qualifies for protection under the attorney-client privilege. This record contains sensitive information from the client, Mr. Loose, representing DOE.

The document also qualifies for protection under the work product doctrine. This record contains legal strategies and opinions. Plaintiff does not show a "substantial need" for discovery, let alone the heightened necessity required for release of an attorney's mental impressions and legal conclusions.

## Document 19

Defendant seeks protection under the work product doctrine. This record, however, does not satisfy the standards for protection under RUSCC 26. Plaintiff has shown a substantial need to discover the nature of DOE's early deliberations about the patent. Plaintiff will not, without undue hardship, discover the content of conversations between Mr. Wells of Battelle and DOE's patent counsel. This document

---

4. At oral argument, this court indicated that this document appeared to qualify for protection. Upon reflection, this court determines that neither the attorney-client privilege nor the work product doctrine prevents release of D–14 and D–14A.

5. During the oral argument, this court directed release of this document. Upon reflection, however, the document qualifies for both attorney-client and work product protection.

does not contain any of counsel's mental impressions or legal observations.

*Documents 21, 21A, 21B, 22, 22A, 22B, 22C*

 These lengthy legal memoranda qualify for protection. The attorney-client privilege applies because the memoranda contain information received from both DOE officials and PG & E officers. As an independent basis for protection, the memoranda qualify for protection under RUSCC 26. The documents are replete with the legal conclusions and mental impressions of counsel. Plaintiff does not show any need to discover the legal reasoning of DOE's patent counsel. Plaintiff must show a heightened need, not just a healthy curiosity, to obtain these sensitive work products.

*Document 23*

 This document does not warrant protection. The document recites claim 57 of the '506 patent and describes in a few words claims 58 through 81. The only information beyond the public record recitation of claim 57—a faithful short-hand description of several claims—is not confidential. The parties have repeatedly conceded that many other claims are dependent on claim 57. Moreover the claims are public records. This digest of the content of those claims does not warrant protection.

*Documents 24 and 24A*

 These handwritten notes of DOE's patent counsel qualify for protection under the work product doctrine. These notes embody legal conclusions and the source of counsel's conclusions about several claims. Plaintiff does not show a need for discovery of this material.

*Documents 25, 26, 27*

 These documents are legal memoranda about the validity of the '506 patent or the disposition of the administrative claim which preceded this litigation. These documents appear to contain information imparted by DOE, the client, to attorneys.

The documents also contain the mental impressions of DOE's attorneys. Plaintiff does not show a need for discovery of these materials. Therefore, the attorney-client privilege and RUSCC 26 operate to protect these documents.

*Documents 28–61*

At this point in the oral argument, plaintiff's counsel saw no reason to examine these documents. Plaintiff's counsel agreed that, on the basis of the court's rulings, these documents would not meet the standards for release. Indeed, the court concurs that under the standards already discussed, either the attorney-client privilege or RUSCC 26, or both, would protect these records.

*Documents 80, 80A, 95, 97–98, 101–102–102A, 104–105–105A, 106–107*

Defendant invokes the work product rule. Plaintiff shows a substantial need to discover DOE's early deliberations on use of the '506 patent. Moreover, plaintiff is not likely to obtain, without undue hardship, the correspondence between PG & E, EIC, DOE, and other interested parties. This correspondence does not contain the mental impressions or legal theories of DOE's counsel or other representatives of DOE. Therefore, RUSCC 26 does not bar release of these letters.

*Documents 93 and 94*

These documents record telephone conversations. These notes contain the mental impressions and legal theories of DOE's counsel. Plaintiff does not show a heightened need to discover the contents of these discussions. Accordingly, the work product rule protects these records.

*Conclusion*

As explained above, documents 14, 14A, 19, 23, 80, 80A, 95, 97, 98, 101, 102, 102A, 104, 105, 105A, 106, 107 are subject to discovery. Either the attorney-client privilege or the work product doctrine prevent discovery of the remaining documents.