**The CIT GROUP/EQUIPMENT FINANCING, INC.,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–4027L.**

United States Claims Court.

Nov. 26, 1991.

---

Joseph E. LeBlanc, Jr., New Orleans, La., attorney of record for plaintiff. Margaret M. Sledge, and Nesser, King & LeBlanc, of counsel.

Dorothy B. Burakreis, Washington, D.C., with whom was Acting Asst. Atty. Gen. Barry Hartman, for defendant. Elizabeth Griffin, Asst. Dist. Counsel, U.S. Army Corps of Engineers, of counsel.

---

1. The Taking Impact Analysis is also referred to as the Takings Implication Assessment. Both

## ORDER

FUTEY, Judge.

This case is before the court on plaintiff's motion to compel the production of a Taking Impact Analysis (TIA) document pursuant to RUSCC 37(a)(2).[1] The TIA was drafted by the Army Corps of Engineers (Corps) in connection with the evaluation of a permit sought by plaintiff pursuant to the Clean Water Act, 33 U.S.C. § 1344 (1988), to develop property owned by plaintiff in the State of Louisiana. In the underlying action, plaintiff alleges that there has been a taking of the Louisiana property under the Fifth Amendment of the Constitution of the United States by virtue of denial of the permit. In its answer, defendant asserts that this court lacks jurisdiction and, alternatively, the complaint fails to state a claim upon which relief can be granted.

In response to the motion to compel, defendant sets out four grounds in support of its motion for a protective order concerning the TIA. (RUSCC 26(c)(1)). First, defendant asserts that the TIA is not within the scope of discovery under RUSCC 26(b)(1), because it is not relevant to the issue of the case. Defendant also asserts that the TIA is covered by the attorney-client privilege, the attorney work product doctrine and the deliberative process privilege. Plaintiff, in turn, denies these assertions.

### Discussion

A. Relevancy of the TIA

RUSCC 26(b)(1) provides in part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.

Although, "[r]elevant material may subsequently be protected from discovery by proper claims of privilege ... the initial question is that of relevance." *Shipkovitz v. United States*, 1 Cl.Ct. 400, 401 (1983). Hence, the threshold issue before the court

are designated TIA.

is whether the TIA is relevant to the pending action.

■ The TIA was created pursuant to Executive Order No. 12630, 53 Fed.Reg. 8859 [2] and the Attorney General's Guidelines for the Evaluation of Risk and Avoidance of Unanticipated Takings (Guidelines), issued on June 30, 1988. Defendant asserts that—

> Whether or not the TIA advised that a permit denial would have "takings implications" is merely a risk assessment for internal purposes, *not* a determination of liability ... whether or not the TIA process itself was followed would be relevant only if the Executive Order and the TIA process created a cause of action, standing, or rights in third parties. They unequivocally do not.[3]

Hence, defendant argues that the TIA is only relevant if plaintiff seeks to set forth a cause of action under the Executive Order. The Executive Order, however, creates no private cause of action. Thus, defendant contends that the TIA is irrelevant to the current action and is not within the scope of RUSCC 26(b)(1). Nonetheless, plaintiff counters that—

> The fundamental issue in this matter is whether the COE's [Corps] denial of a ... permit resulted in a taking, and if so, the amount of compensation and damages. Similarly, whether the [Corps] permit denial resulted in a taking is the fundamental question to be addressed in the TIA. Thus, the TIA is relevant.[4]

This court agrees. A private cause of action under the TIA would seek to enforce the Corps to act in conformity with the determination of the TIA. This is not what plaintiff seeks to accomplish. Rather, plaintiff asserts that there was a taking of plaintiff's property. Specifically, plaintiff wants to ascertain whether the Corps determined in the TIA that a taking would result from the permit denial. This information, would then be used in support of plaintiff's claim of a taking. Since the TIA

deals with the specific takings implications of plaintiff's permit denial, it is relevant to the case under RUSCC 26(b).

## B. Attorney–Client Privilege

Defendant also asserts that the TIA is covered by the attorney-client privilege and, thus, is not discoverable by plaintiff. Plaintiff replies that it is asking merely for the final TIA document and is not seeking the legal advice given by counsel to the Corps. Plaintiff asserts that the TIA is a regulatory analysis, and, as such, is discoverable.

■ The attorney-client privilege "encourages complete disclosure of information in the nature of confidential communications by a client to the attorney during the attorney-client relationship." *Eagle–Picher Indus., Inc. v. United States*, 11 Cl.Ct. 452, 456 (1987); *see Upjohn v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1980). Moreover, the privilege applies when—

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] ... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.

*Eagle–Picher*, at 456, *citing United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950). In this case, the TIA was created by attorneys acting as counsel to the Corps. The privilege also applies to agency counsel who provide legal counsel to government agencies. *National Labor Relations Bd. v. United States*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); *Deuterium Corp. v. United States*, 19 Cl.Ct. 697,

2. Issued by President Reagan, March 15, 1988.

3. Defendant's Motion for a Protective Order, p. 6.

4. Plaintiff's Reply to Defendant's Motion, p. 3.

700 (1990). Thus, this case qualifies under the first portion of the test; the client was the government agency and the communication was made to the government's lawyer, counsel for Corps. Furthermore, the communication was confidential in that it was intended for use only by those issuing the permit. *Triax Co. v. United States*, 11 Cl.Ct. 130, 132 (1986).

Moreover, this privilege extends to legal advice given by the attorney and not just confidential communications. *Eagle-Picher* at 456, *citing Coastal Corp. v. Duncan*, 86 F.R.D. 514, 520–21 (D.Del.1980); *Upjohn*, 449 U.S. at 390, 101 S.Ct. at 683. Thus, the court must decide the issue of whether this was *legal advice* rendered by Corps counsel. Plaintiff maintains that this is not legal advice, and is, instead, simply a regulatory analysis. Hence, it is necessary for this court to parse the Guidelines under which the TIA was created, in order to determine whether the TIA falls within the attorney-client privilege.

The Guidelines define a TIA:

Before undertaking any proposed action or implementing any policy or action subject to evaluation, each agency shall perform a Takings Implication Assessment (TIA). The TIA shall be made available to the agency decisionmaker responsible for determining whether and how to implement a policy or to undertake an action, in such form and in such manner as is calculated to ensure that the decisionmaker may make meaningful use of the TIA in formulating his or her decision.

a. The TIA is to be integrated, in a form and manner in the agency's discretion, into normal agency decisionmaking processes.

b. The TIA will serve as a tool for assessing the taking implications and related fiscal impact of policies and actions within the Executive Order. It is to provide *candid, predecisional advice* as a part of the continuing process of developing government policies and actions.

c. For administrative and regulatory policies and actions subject to evaluation under the Executive Order and these Guidelines, a TIA must include:

i. An assessment of the likelihood that the proposed action or policy may effect a taking for which compensation is due, in light of the principles referenced in the Executive Order and these Guidelines ... *and under applicable case law;*

ii. Identification and consideration of alternatives, if any, to the proposed policy or action which also *achieve the government's obligations under law* but would reduce intrusions on the use or value of private property; and

iii. An estimate of the potential financial exposure to the government should a court find the proposed policy or action to be a taking. [Emphasis added.]

Guidelines, p. 21–22.

The TIA is a document containing legal advice as to the taking implications of the particular permit at issue. The Guidelines mandate that the TIA shall analyze the permit under applicable case law and determine government obligations under the law. Hence, this is legal advice rendered by counsel to its client, the government agency, and is covered by the attorney-client privilege. As such, it is not discoverable by plaintiff.[5] Therefore, plaintiff's motion to compel discovery of the TIA is denied and defendant's motion for a protective order is hereby granted.

---

5. Since the court denies the motion to compel, it is unnecessary to reach the question of whether the TIA is also covered by the attorney work product and deliberative processes privileges.